UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                     :

LABORATORY SYNERGY, LLC, and      :
VISCAL, LLC,                           :

                                     :

                 Plaintiffs,     :

                                     :        06 Civ. 2905 (SCR)

     -v.-                             :

                                   :        **OPINION AND ORDER**

ILMVAC, USA and ILMVAC,        :

                                   :

               Defendants.   :

                                   :
---------------------------------------------------------------x

Richard L. Parker, Hayward, Parker & O'Leary,
Middletown, NY, for plaintiffs.

Paul R. Niehaus, Niehaus, LLC, New York, NY
(Dana N. Richens, Rachel D. King, Smith Gambrell
& Russell, LLP, Atlanta, GA, of Counsel),
for defendant(s).


GERARD E. LYNCH, District Judge:

       Laboratory Synergy, LLC, and its predecessor company, Viscal, LLC (collectively,

"Viscal"), bring this action against ILMVAC GmbH ("I-GmbH"), a German corporation, and its

American affiliate ILMVAC, LP ("I-LP"),[1] alleging breach of contract and various other causes

of action.  Defendants move to dismiss the action for lack of in personam jurisdiction and failure

to state a claim.  The motion to dismiss for lack of jurisdiction will be denied, and the motion to

dismiss for failure to state a claim will be granted in part and denied in part.[2]

---

       [1] Plaintiffs sued these entities as ILMVAC and ILMVAC, USA.  Defendants maintain
that the names given in the text are the accurate names of the entities in question.

       [2] Due to an extreme backlog in the White Plains Division of this Court, this matter was
recently assigned by the Chief Judge to the undersigned judge, solely for purposes of deciding

## BACKGROUND

Plaintiff Viscal, a New York company with headquarters in Orange County, New York, imports scientific equipment from Europe and distributes it in the United States.  I-GmbH manufactures such equipment.  In March 2001, Viscal and I-GmbH entered an oral distributorship agreement, under which Viscal would be the North American distributor for I-GmbH's products.[3]  According to plaintiffs, the agreement specifically provided that I-GmbH products sold by Viscal would be shipped from Germany to JFK Airport in New York, where Viscal would be responsible for clearing U.S. customs, after which the goods would be shipped to Viscal's warehouse in Orange County, New York, for further distribution to customers. Representatives of I-GmbH met with Viscal's principal several times in New York in 2002 and 2003 to further this relationship.  While Viscal's performance as a distributor was apparently disappointing to I-GmbH, it is undisputed that Viscal sold I-GmbH products worth approximately 75,000 euros through August 2003.

On September 1, 2003, I-GmbH terminated its distributorship relationship with Viscal. Plaintiffs allege, however, that I-GmbH nevertheless agreed to continue to recognize Viscal/Laboratory Synergy as its exclusive distributor with respect to the relationship with Sigma-Aldrich ("Sigma"), a Wisconsin chemical manufacturer, and the Austin Group, an Illinois

---

the instant long-pending motion, with the gracious consent of the Honorable Stephen C. Robinson, United States District Judge, to whom this case is otherwise assigned.  The case remains assigned to Judge Robinson for all other purposes, with the exception of any motion for reconsideration of this Opinion and Order.

[3] There is apparently no dispute about the existence of this oral agreement.  The parties disagree about whether the contract provided for an exclusive or non-exclusive distributorship.

contractor building laboratories for Sigma.[4]  According to plaintiffs, both before and after the termination of the overall distributorship, Viscal did substantial work to develop Sigma as a customer for I-GmbH products.  However, when plaintiffs ultimately bid on the Sigma project according to the distributorship's terms, which included a mark-up for Viscal, I-GmbH bid the project directly at the price at which it had previously sold the products to Viscal.  Needless to say, Sigma accepted the I-GmbH bid, and when Sigma finally purchased I-GmbH products through I-LP in January 2005, Viscal was left with nothing.

Viscal's complaint charges that I-GmbH's actions breached the alleged agreement to extend its distributorship in connection with the Sigma project, and constituted fraud and tortious interference with Viscal's business relationships with Sigma.

## DISCUSSION

### I.    In Personam Jurisdiction

Noting that defendant I-GmbH is a German corporation that has little or no ongoing business in New York, defendants move to dismiss the case for lack of in personam jurisdiction.  Plaintiffs counter that jurisdiction exists under New York's long-arm statute, CPLR § 302(a)(1), which provides for jurisdiction over any person who "contracts anywhere to supply goods or services in the state" with respect to any "cause of action arising from" such contract.[5]  Plaintiffs

---

[4] As noted, I-GmbH disputes that the distributorship was ever exclusive.  While acknowledging that it agreed to an extension of the distributorship in certain respects, I-GmbH disputes the terms of the extension, contending that it agreed only to honor the terms of the agreement with respect to any outstanding orders secured by Viscal within 90 days of the termination.  (D. Mem. 11 n.3.)

[5] Plaintiffs specifically disclaim any reliance on the first clause of § 302(a)(1), which provides for jurisdiction with respect to claims arising from "transact[ing] any business within the state."  (P. Mem. 13.)  Because jurisdiction exists under the provision cited in the text, the

are correct.

I-GmbH argues that plaintiffs allege a breach not of a contract for the sale of goods into New York, but rather for breach of the alleged limited extension of the distributorship arrangement with respect to the Sigma relationship, which I-GmbH characterizes as simply an "agreement . . . for *Plaintiffs* to perform services for [I-GmbH], not for I-GmbH to supply goods in New York." (D. Mem. 11; emphasis in original.)  But this mischaracterizes Viscal's allegations.  Viscal alleges that the extension provided that it would continue to be I-GmbH's agent for the sale of its products to Sigma, and that it "would receive its regular commission on the sale *or be allowed to buy the products needed to fill the order at the standard terms and conditions existing*" under the original distributorship agreement.  (Verified Compl. ¶ 15; emphasis added.)  As noted above, the complaint alleges that those terms contemplated the sale of products through JFK Airport and Viscal's facilities in New York State.

It will of course be for a jury to determine whether any such contracts actually existed, what their terms were, and whether I-GmbH breached the contract.  But it is unquestionably the case that Viscal alleges the breach of a contract that throughout its life, and continuing into the alleged extension with respect to Sigma, called for the sale of goods to Viscal in New York for resale to its North American customers.  I-GmbH's effort to subdivide its agreements with Viscal into two distinct agreements, under which goods would be sold into New York only under the first, is unpersuasive.  Viscal alleges in a verified complaint, and proffers an affidavit supporting its allegations, that I-GmbH knowingly entered a distributorship contract with a New York-based

Court need not address whether the "transacting business" clause confers jurisdiction on the facts of this case.

company; required that company as part of that contract to maintain an inventory in New York; sold goods into New York for three years under that contract; sent representatives to New York to further that relationship; and then extended the relationship with respect to a particular customer, only to breach the agreement by selling goods directly to that customer.  Such allegations  provide a classic basis for long-arm jurisdiction.  I-GmbH's argument that its ultimate agreement with Sigma called for the shipment of goods directly to Wisconsin is a red herring.  That I-GmbH *breached* the contract by sending goods to Wisconsin does not defeat jurisdiction; the claim still arises from breach of what Viscal alleges was a "contract[ ] . . . to supply goods" in New York.[6]

Accordingly, defendants' motion to dismiss for lack of in personam jurisdiction must be denied.

## II.    Failure to State a Claim

Defendants next argue that the complaint fails to state any claim against I-LP upon which relief can be granted, and fails to state a claim for fraud or tortious interference against I-GmbH. In deciding this motion, the Court must accept the allegations of the complaint as true, see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir. 1995); Goonewardena v. New York, 475 F. Supp. 2d 310, 320 (S.D.N.Y. 2007), and may grant the motion only if the

---

[6] Although defendants refer to the requirement that any exercise of long-arm jurisdiction must be consistent with the requirements of due process (D. Mem. 5), they appear to argue only that New York's long-arm statute does not confer jurisdiction, and not that the exercise of jurisdiction on these facts would violate due process.  Given I-GmbH's deliberate decision to transact business with a New York company and its extensive dealings with that company over more than two and a half years, including emails and personal visits to New York and the shipment of tens of thousands of dollars worth of goods into the state, any contention that it would be constitutionally unfair to hold I-GmbH to answer a lawsuit in New York arising from those dealings would be frivolous.

plaintiff has not alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). A court must apply a "flexible plausibility standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (internal quotation marks omitted).

The discussion above makes clear that the complaint states a claim for breach of contract against I-GmbH, in that it specifically alleges that I-GmbH agreed to extend an exclusive distributorship agreement with respect to the Sigma relationship, under which Viscal would be entitled to purchase I-GmbH products and re-sell them for a profit to Sigma (or receive a commission on any sale by I-GmbH), and that I-GmbH breached that agreement by selling the products to Sigma directly without paying any compensation to Viscal. The complaint also states an alternative claim for quantum meruit. The complaint alleges that Viscal provided substantial services, both before and after the termination of the original distributorship arrangement, toward the end of convincing Sigma and its contractor Austin to purchase I-GmbH products; that I-GmbH profited from those services in achieving a substantial sale to Sigma; and that justice requires compensation to Viscal for its services in this regard.

With respect to I-LP, the complaint is sparse and confusing. As defendants point out, the complaint does not specifically allege any agreement between Viscal and I-LP. Defendants proffer evidence that I-LP was not even formed until May 2004, some nine months after the termination of Viscal's original distributorship with I-GmbH. (D. Mem. 3; Askew Decl. ¶ 2.) At this stage of the case, however, plaintiffs' allegations must be taken as true, and defendants' proffer of evidence refuting those allegations must be disregarded. While plaintiffs' allegations

6

are less than clear with respect to I-LP, the complaint (which misnames both defendants) refers to both "ILMVAC" and "ILMVAC, USA" without clear distinction as the singular "defendant," and thus appears, albeit murkily, to allege the facts supporting its breach of contract and quantum merit claims with respect to both companies.[7]  As plaintiffs acknowledge (P. Mem. 15), the complaint is vague because plaintiffs lacked specific knowledge as to the corporate relationships involved.  Upon proper clarification of the record – as plaintiffs also candidly acknowledge (id.) – the claims against I-LP likely will be dismissed.  At the bare pleading state, however, the motion will be denied.

The case stands differently with respect to plaintiffs' tort claims.  Plaintiffs' fraud claim amounts to nothing more than the allegation that I-GmbH "represented and promised that the Plaintiffs, would still be its agent for the sale of its products to Sigma Aldrich and Plaintiffs would receive its regular commission on the sale or be allowed to buy the products needed to fill the order at the standard terms and conditions existing with Plaintiff VISCAL, INC."  (Verified Compl. ¶ 15.)[8]  This statement does not allege any misrepresentation of fact.  Rather, it alleges a promise by I-GmbH that it would do certain things in exchange for certain undertakings on Viscal's part.  The claim thus merely duplicates plaintiffs' claim for breach of contract, and must therefore be dismissed.  See, e.g., Papa's-June Music v. McLean, 921 F. Supp. 1154, 1162

---

[7] It appears undisputed, moreover, that Sigma's ultimate purchase of I-GmbH products was made through I-LP, which thus arguably profited from Viscal's sales efforts on behalf of the ILMVAC companies.  Plaintiffs' claim of quantum meruit thus would appear plausible with respect to I-LP.

[8] The allegation is reprinted here exactly as it appears in the complaint, with all infelicities of grammar and punctuation intact.  With respect to plaintiffs as well as defendants, the complaint sometimes wobbles between singular and plural nouns and pronouns.

(S.D.N.Y. 1996) (dismissing fraud claim where "the only fraud alleged arises out of the same facts that serve as the basis for the breach of contract claim"); Locascio v. Aquavella, 185 A.D.2d 689, 690 (N.Y. App. Div. 4th Dep't 1992) (same).

As for plaintiffs' duplicative claims for tortious interference with a "business relationship" and with "prospective business advantage," plaintiffs' brief in opposition to defendants' motion entirely fails to defend these claims, which must therefore be deemed abandoned, and accordingly dismissed.

### CONCLUSION

Accordingly, for the reasons stated above, plaintiffs' claims for fraud and tortious interference are dismissed for failure to state claims on which relief can be granted, and defendants' motion to dismiss for lack of personal jurisdiction and failure to state a claim is denied in all other respects.


SO ORDERED.

Dated: New York, New York
       December 1, 2008

GERARD E. LYNCH
United States District Judge

8